**BERNSTEIN SEAWELL & KOVE,**
Plaintiff-Appellee,

v.

**W.E. BOSARGE, Jr.,**
Defendant-Appellant.

No. 86–2036.

United States Court of Appeals,
Fifth Circuit.

April 7, 1987.
Rehearing Denied May 20, 1987.

Jerry L. Schutza, Axelrod, Smith, Komiss & Kirshbaum, Houston, Tex., for defendant-appellant.

Thomas J. Hannsz, Pasadena, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, REAVLEY and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

W.E. Bosarge, Jr. is appealing the order of the United States District Court for the Southern District of Texas confirming and reducing to judgment an arbitration award which requires Bosarge to repurchase certain shares in a limited partnership of which he was once the general partner. Bosarge claims that the arbitration award is unenforceable for a variety of reasons. Because we find a lack of merit in any of Bosarge's contentions, we affirm the decision of the district court.

## I. *Facts*

Hugoton I, Ltd., a Texas limited partnership, was formed in 1979 to develop an oil and gas well. Appellant Bosarge was the general partner, and appellee Bernstein Seawell & Kove (BS & K) was one of Hugoton's twenty-three limited partners. In 1980, Bosarge incorporated a new public company known as Texas General Group, Inc. (Texas General). In connection with the initial public offering of Texas General's common stock, Bosarge claims to have resigned as general partner of Hugoton and to have transferred his general partnership interest to Texas General, but no notice of this alleged resignation and transfer was given to any of the limited partners. While BS & K corresponded with Texas General from time to time about matters of interest to the partnership, it claimed that this correspondence was based on the understanding that Texas General was an agent of Bosarge.

The limited partnership agreement contained a provision obligating the general partner, at the option of any of the limited partners, to repurchase a portion of the limited partnership interest. The purchase price of each partnership unit was to be determined through the use of a specific formula contained in the agreement. The number of units to be repurchased in each year would vary with the market value of the units. In any given year, the total repurchase price could be anywhere from zero up to a contractual cap of $55,020. The general partner's obligation to repurchase the limited partnership units terminated upon the dissolution of the partnership.

In 1983, BS & K decided to exercise its option to have the general partner repurchase its share of the limited partnership. A dispute arose among the parties concerning the interpretation of the repurchase provision of the limited partnership agreement. BS & K notified the other limited partners of the problem, and they authorized BS & K to proceed on their behalf. In April 1983, appellee began arbitration proceedings as provided for in the agree-

ment. A notice to arbitrate was sent to "W.E. Bosarge, Jr., Hugoton I. Ltd., 350 South Post Oak Road, Suite 200, Houston, Texas." Bosarge claims never to have received this notice.

BS & K chose an arbitrator in accordance with the agreement. After Bosarge failed to respond to the notice to arbitrate, BS & K requested Chief Judge Singleton of the United States District Court for the Southern District of Texas to select an arbitrator. A third arbitrator was then selected by the two arbitrators already chosen. The arbitration panel convened in October 1983, but Bosarge failed to make an appearance at the hearing. After evaluating the evidence presented by BS & K, the panel found in favor of the twenty-three limited partners. The arbitration award required appellant to repurchase the maximum number of partnership units for the year 1982 and to prepare calculations and to repurchase units in accordance with those calculations for the year 1983. Bosarge made no effort to comply with the terms of the award.

On March 7, 1984, BS & K filed suit in the United States District Court pursuant to the provisions of the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*, asking for a judgment confirming the arbitration award. The case was tried to the court in December 1985. At that time, the district court granted BS & K's oral request for a trial amendment to include the other twenty-two limited partners, clarifying the fact that BS & K was bringing the action on behalf of all the limited partners. On January 7, 1986, the district court entered a final judgment in favor of the limited partners. Bosarge filed a timely notice of appeal.

## II. *Notice*

Appellant's first contention is that the arbitration award is unenforceable because

he was not informed of the arbitration proceeding until after the hearing had been held, and the arbitrators had reached a final decision. The district court, however, determined that "actual notice of the arbitration proceeding was given to all parties in accordance with the partnership agreement." Such a finding of fact may be reversed only if it is clearly erroneous. *Wiley v. Offshore Painting Contractors, Inc.*, 711 F.2d 602, 610 (5th Cir.1983). Because there is sufficient evidence to support the conclusion that Bosarge received actual or constructive notice of the arbitration hearing, we affirm the finding of the district court. While "[a]ll parties in an arbitration proceeding are entitled to notice and an opportunity to be heard," *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649, 651 (5th Cir.1979), due process is not violated if the hearing proceeds in the absence of one of the parties when that party's absence is the result of his decision not to attend. *International Association of Heat and Frost Insulators and Asbestos Workers v. General Pipe Covering, Inc.*, 613 F.Supp. 858, 860 (D.Minn.1985).

■ Appellant. contends that the evidence clearly established that the arbitration notice was not mailed in accordance with the partnership agreement.[1] While BS & K acknowledges that it failed to review the address records of the general partner before sending the notice in April, 1983, it stated that it relied upon a letter from Bosarge, dated November 29, 1982, which listed the Hugoton office address, where the notice was sent, as the one at which he could be reached. The district court was justified, therefore, in finding that BS & K had given Bosarge actual notice of the arbitration proceedings.

1. The partnership agreement provides that notices are to be given in the following manner: Article 16.1 *Notices.* Notices or instruments of any kind which may be or are required to be given hereunder by any Partner to another shall be in writing and deposited in the United States Mail, Certified or Registered, postage paid, addressed to the respective Partner at the post office appearing in the records of the

General Partner. Any Limited Partner may change his address by given notice in writing, stating his new address to the General Partner. Any notice when so posted shall be deemed to have been given effective as of 72 hours, excluding Saturdays, Sundays, and holidays, after the depositing of such mail in an official United States Mail receptacle.

Even if Bosarge never received the actual notice sent by BS & K there is sufficient evidence to support the finding that Bosarge had constructive notice of the arbitration proceedings prior to their commencement. William E. Sutton, an attorney for BS & K, testified that one of the arbitrators had notified Bosarge of the time and place of the hearing, and the district court was entitled to believe that testimony. Sutton also recalled a telephone conversation with attorney Robert Axelrod, during which Axelrod stated that he would be representing Bosarge in arbitration proceeding. Sutton testified that this discussion with Axelrod occurred prior to the hearing and that Axelrod was advised in writing of the date of the proceedings.

Alexrod's testimony did not refute his representation of Bosarge, even though he stated that he was representing Texas General at the time of the arbitration proceeding. Axelrod also stated that he did not recall any specific conversations or correspondence with Sutton, but he had no reason to doubt the veracity of Sutton's account. Once Axelrod's knowledge of the arbitration proceedings was established, that knowledge could properly be implied to Bosarge, since a client "is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Cooper v. Lewis*, 644 F.2d 1077, 1082 (5th Cir.1981) (quoting *Link v. Wabash Railroad*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962)).

III. *Representative Capacity*

Appellant's next contention is that, assuming *arguendo* the arbitration panel had the authority to hear the dispute, the district court erred in finding that "Bernstein, Seawell & Kove filed the instant action on behalf of itself as a limited partner, and as a representative of the twenty-two other [limited partners] named in the original complaint...." Appellant claims the evidence clearly establishes that BS & K was

acting solely in its own interest and that the award may be confirmed only to the extent of BS & K's share of the partnership. We determine, however, that the district court's finding is not clearly erroneous.

The caption of the original complaint filed in the district court by BS & K reads: "IN THE MATTER OF THE ARBITRATION BETWEEN BERNSTEIN SEAWELL & KOVE, Petitioners...." Bosarge claims that, even if BS & K intended to act in a representative capacity, it failed to include the names of all the parties in accordance with Fed.R.Civ.P. 10(a),[2] thereby waiving its capacity to bring suit on behalf of any party other than itself. The complaint, however, expressly requested the court "for an order confirming the award of Arbitrators In the Matter of the Arbitration between Bernstein Seawell & Kove, et al, Petitioners and W.E. Bosarge, Jr., Respondent...." Additionally, the copy of the arbitration award attached to the complaint listed the twenty-three limited partners. This list was prefaced by the following statement: "Limited Partners of Hugoton I, Ltd. Who Constitute the Petitioners Herein."

Bosarge claims he did not know that BS & K was purporting to represent anyone other than itself until the issue was raised at trial. The evidence, however, belies the accuracy of this assertion. The caption of appellant's *"MOTION TO DISMISS AND ORIGINAL ANSWER OF RESPONDENT W.E. BOSARGE JR."* clearly refers to "IN THE MATTER OF THE ARBITRATION BETWEEN BERNSTEIN SEAWELL & KOVE, *ET AL*, Petitioners." This caption shows that Bosarge had knowledge that BS & K was acting in a representative capacity. His contention that BS & K brought the complaint only on its own behalf cannot prevail.

Any questions concerning the ability of a party to sue in a representative capacity must be raised by specific negative averment. Fed.R.Civ.P. 9(a). Bosarge

---

**2.** Fed.R.Civ.P. 10(a) states that "in the complaint the title of the action shall include the names of all the parties...."

did not challenge BS & K's authority to bring suit on behalf of the other twenty-two limited partners prior to the commencement of the trial. Thus any right to object to BS & K's representative capacity was waived. *See Myers v. Manchester Insurance & Indemnity Co.*, 572 F.2d 134, 184 (5th Cir.1978) (appellant waived its right to challenge appellee's representative capacity by failing to object until the post-trial conference). BS & K brought suit to reduce to judgment the arbitrators' award which had been entered in favor of all the limited partners. The district court's finding that BS & K took this action on behalf of those limited partners is not clearly erroneous. Appellant has no cause to object to the trial amendment adding the names of the other twenty-two limited partners since the amendment did not bring any additional parties into the suit. It merely clarified the fact that all the limited partners were original parties in the action.

Since we affirm the district court's finding that this suit was instituted by all of the limited partners, we need not consider in detail appellant's statute of limitations claims. The complaint to enforce the arbitration award was filed within one year as required by 9 U.S.C. § 9.

■ Likewise, appellant was not prejudiced by the district court's decisions to grant the trial amendment and to deny appellant's motion for a continuance. Bosarge knew or should have known that all the limited partners were included in the arbitration award and that the enforcement action to confirm the award was brought on behalf of all the interested parties. Additionally, the limited partnership agreement to arbitrate is clearly sufficient to satisfy the requirement that an agreement to arbitrate must be in writing. *See* 9 U.S.C. § 2.

## IV. *Adequacy of Arbitration Award*

Appellant also contends that the arbitration award is unenforceable because "the arbitrators exceeded their powers, [and] so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *See* 9 U.S.C. § 10(d). Bosarge contends that the arbitration award failed to meet the statutory requirements of 9 U.S.C. § 10(d) on three separate grounds. First, he claims that certain provisions of the arbitration award are incomplete, ambiguous, and contradictory. Second, he claims that the ex parte receipt of information constituted prejudicial misconduct on the part of the arbitrators. Lastly, he claims that there was evident partiality on the part of one of the arbitrators. The district court, however, concluded that, as a matter of law, "[n]o statutory grounds exist for the vacation of the arbitrators' award.

■ Bosarge's allegations concerning the insufficiency and inadequacy of certain provisions of the award are unfounded.[3] Although the 1982 award does not specify which shares are to be repurchased, the partnership agreement clearly states that "[i]f less than all of the limited partnership interests tendered are purchased, the interest purchased will be selected by lot."[4] It is a relatively simple matter, therefore, to ascertain whose limited partnership shares Bosarge will be required to purchase.

■ The same rationale holds true for calculating Bosarge's obligation to repurchase shares under the 1983 award. While

---

**3.** The three provisions of the award to which Bosarge objects are:

(3) Respondent [is] to purchase each year limited partnership interests of Hugoton pursuant to Article 13 of the Partnership Agreement up to a maximum of $55,020.

(6) Respondent is hereby directed to purchase 3.248 units of limited partnership interests of the limited partners of Hugoton pursuant to Article 13 of the Partnership Agreement for a purchase price of $55,020 for the year 1982.

(7) Respondent is hereby directed to prepare the calculations for the year 1983 pursuant to

Article 13 of the Partnership Agreement and as provided in this AWARD and to purchase the number of units as determined thereby.

**4.** The limited partnership agreement also provides that a limited partner may "tender all of, but not less than, the total interest that he has in the Partnership...." This restriction does not conflict with the provision in the arbitration award requiring appellant to purchase 3.248 units since that figure is merely the product of mathematical calculations.

the arbitration award did not include the number and cost of the shares to be repurchased, it specified the method and the procedures to be used to obtain the exact figures. Bosarge's duties under the arbitration award are clear and unambiguous.

■ There is no authority for Bosarge's contention that the ex parte receipt of evidence at the arbitration hearing, occasioned by his non-participation, constituted prejudicial misbehavior on the part of the arbitrators. *Food Handlers Local 425 v. Pluss Poultry, Inc.*, 260 F.2d 835 (8th Cir. 1958), the case relied upon by appellant, does not stand for the proposition that any arbitration award decided without the participation of both parties is void and unenforceable. Instead, the action to enforce the arbitration award in *Food Handlers* was dismissed only after the district court determined that the arbitration panel had been improperly convened. *Id.* at 836–37. *Accord Avis Rent A Car System, Inc. v. Garage Employees' Union*, 791 F.2d 22, 25 (2d Cir.1986) (arbitration award vacated in *Food Handlers* because "arbitration panel [was] composed of one agency-appointed and one union-appointed member, when contract called for jointly-appointed panel of three"). Since BS & K followed the procedures set out in the limited partnership agreement in setting up the arbitration panel, Bosarge is in no position to object because he did not participate.[5]

■ Bosarge's remaining asserted ground for vacating the arbitration award, evident partiality or corruption on the part of one of the arbitrators, Herman Goetzoff, must also fail. Appellant had the obligation to make his objection to the composition of the arbitration panel at the time of the hearing. By not doing so, Bosarge waived his right to challenge the selection

of the arbitrators. *See Sheet Metal Workers International Association v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir.1986) ("Kinney failed to object to the selection of the Board members at the time they were seated and has hereby waived this objection."). Even assuming no waiver, Bosarge failed to prove the existence of facts "which would establish a reasonable impression of partiality...." *Id.* at 745. "The appearance of impropriety, standing alone, is insufficient." *Id.* at 746. The only evidence produced at trial concerning Goetzoff's alleged partiality was that at one time Goetzoff owned a fractional share of appellant's partnership interest, and he had received commissions on the sale of limited partnership interests in Hugoton. This evidence is insufficient to prove bias under the strict standard of 9 U.S.C. § 10. "Evident partiality means more than a mere appearance of bias." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 173 (2d Cir.1984).

■ The district court did not abuse its discretion by refusing to allow Bosarge to amend his pleadings to include evidence of Goetzoff's alleged partiality. As the court pointed out, the issue should have been raised earlier. While appellant claimed to have no prior knowledge of the arbitrator's bias, the undisputed testimony is that Goetzoff received his interest in Hugoton from Bosarge. Bosarge's assertion of newly discovered evidence is belied by the record.

## V. *Remaining Objections*

Appellant's remaining objections to the arbitration award are without merit. We mention them only briefly. Bosarge asserts that he has no duty to repurchase any of the shares of the limited partners because he resigned as general partner of Hugoton in 1980 and transferred his part-

---

5. The limited partnership agreement provides: Either party to the disagreement may, at the time such board of arbitrators is desired notify the other of the name of arbitrator, and such other party shall, within ten (10) days thereafter, select an arbitrator and notify the party desiring arbitration of the name of such arbitrator. If such other party shall fail to name a second arbitrator within ten (10) days, then the party who first served notice may, on reasonable notice to the other party, apply to the person who may then occupy the position as the Senior Judge of the United States District Court for the Southern District of Texas, Houston Division, for the appointment of such second arbitrator for and on behalf of the other party, and in such position shall act as fully and for all purposes as if named by the other party.

nership interest to Texas General.[6] The district court properly concluded, however, that this resignation was of no legal consequence because it found that "[r]espondent never provided notice to petitioners regarding his resignation or the unilateral transfer of his partnership interest. ..."

■ The evidence supports the court's determination that BS & K had no actual or constructive notice of Bosarge's resignation. Myron Kove, a partner at BS & K, testified that he believed Bosarge to be Hugoton's general partner at all times relevant to this dispute, and that, although he had contacted Texas General about matters involving the partnership, he had done so only because he considered Texas General to be acting as Bosarge's agent. This conclusion is supported by evidence that Bosarge received a copy of all correspondence BS & K sent to Texas General.

Bosarge, on the other hand, failed to produce any documentation to support his alleged resignation. He did testify to giving oral notice of his resignation to two people, but they both were deceased at the time of the trial. Since apparently no one else was informed of Bosarge's resignation, the district court did not err in concluding that there was no effective resignation and that Bosarge continued to be obligated by the repurchase provisions of the partnership agreement.

■ Bosarge also contends the arbitration panel had no authority to make its decision because it had not been convened in accordance with 9 U.S.C. § 4, which provides for a petition to the district court to compel arbitration.[7] The procedural requirements of 9 U.S.C. § 4, however, are permissive, not mandatory. *Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir.) *cert. denied* 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392 (1953). The terms of the limited partnership agreement, on the other hand, authorize the party seeking arbitration to proceed without intervention by the district court. The decision to submit a dispute to arbitration is left solely to the agreement of the parties to the contract, and they are bound by its provisions. *Commercial Metals Co. v. Balfour, Guthrie, & Co. Ltd.*, 577 F.2d 264, 266 (5th Cir.1978). Since the district court determined that the actions of BS & K in seeking arbitration complied with the provisions specified in the limited partnership agreement, Bosarge's attack on this basis must fail.

■ Appellant's final contention is that the claims of BS & K constitute claims for the rescission of a security and as such are nonarbitrable under *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). While the original sale of the limited partnership interests constituted a sale of securities, this action only involves a claim for specific enforcement of a contractual right provided for in the limited partnership agreement. The holding of *Wilko v. Swan* is inapplicable, and the agreement to arbitrate is valid and enforceable.

The judgment of the district court is AFFIRMED.

---

6. Article 13(d) of the partnership agreement provides that "the obligation of the general partner to purchase (or caused to be purchased) limited partners interests ... is also subject to its right to dissolve the partnership ... and in such event, the general partner's purchase obligation shall terminate."

7. 9 U.S.C. § 4 provides in part that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may* petition any United States District Court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." (emphasis added).